# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| HEIDBREDER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:07-CV-111 |
| v. | ) |
| | ) |
| CITY OF CROWN POINT, INDIANA, | ) |
| DANIEL M. KLEIN, MAYOR, INDIVIDUALLY | ) |
| AND IN HIS OFFICIAL CAPACITY | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Heidbreder, Inc., sued a pair of Defendants, the City of Crown Point and its former mayor, Daniel M. Klein. After an unfavorable zoning action by the Defendants, Plaintiff sold a piece of real estate for a far lower price than he could have had Klein not acted against his interests by halting the go-ahead on a redi-mix concrete plant at the location. When the Indiana Court of Appeals later held that Klein's action was unlawful, Plaintiff brought this due process claim to recoup the money he feels was unlawfully deprived to him. Plaintiff argues that his due process rights were violated by the action. Defendants argue that Plaintiff actually states an inverse condemnation takings claim. Defendants argue that Plaintiff is precluded from bringing a claim into federal court until he fully utilizes the state procedure available to determine whether an inverse condemnation action has occurred. Plaintiff argues that the circumstances exempt him from having to use that process before seeking relief here because he has a bona fide due process claim. Even if that were true, however, Defendants argue that Klein, the former mayor, is immune from liability, under theories of both absolute and qualified immunity, as he was acting in a legislative capacity when he made the zoning decision. Defendants move to dismiss

Plaintiff's claim under FED. R. CIV. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction over an unripe takings claim. In the alternative, Defendant moves to dismiss Plaintiff's due process claim because Plaintiff has failed to state a claim upon which relief can be granted because Klein has limited and qualified immunity.

**(A) Standard of Review**

The Federal Rules of Civil Procedure require dismissal if a court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The district court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Moranski v. General Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). When considering a motion to dismiss under Rule 12(b)(1), the district court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss a counterclaim, a court must accept as true all the well-pleaded material facts and must draw all reasonable inferences from those facts in the light most favorable to the pleader. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)]

formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618, (7th Cir. 2007). The factual allegations of the pleading must be enough to raise a right to relief above the speculative level; the pleading must contain enough facts to state a claim to relief that is plausible on its face. *Id*. The Court of Appeals for the Seventh Circuit, reading *Bell Atlantic* and *Erickson v. Pardus,* 127 S.Ct. 2197 (2007)[1] together, has said "we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT &T Mobility LLC*, 499 F.3d 663, 667 (7th Cir 2007).

**(B) Facts**

Plaintiff owned real estate in Crown Point, which he agreed to sell to Prairie Material Sales, Inc. (DE 1 at 2.) The potential buyer planned to construct a redi-mix concrete plant at the site. (*Id.*) The parties agreed to make the sale contingent on approval of the site plan, approval of tax abatement, and approval of a special use permit that would allow construction and operation of the redi-mix concrete plant. (*Id.*) The Plan Commission of the City of Crown Point approved the site plan. (*Id.*) The city's Board of Zoning Appeals then voted to recommend that the Common Council of Crown Point approve the special use of the property. (*Id.* at 3.) The Common Council followed the recommendation, voting to grant the special use permit to

---

[1] *Erickson* was decided two weeks after *Bell Atlantic*.

construct and operate the redi-mix plant on the property. (*Id.*) The Common Council, on the same day, approved the tax abatement. (*Id.*) However, Mayor Daniel M. Klein vetoed the resolution granting the special use. (*Id.*) When Plaintiff then applied for a building permit to begin construction, the Planning and Building Department of the City of Crown Point denied the request, citing the Mayor's veto. (*Id.*)

Plaintiff was thus unable to complete the sale of his real estate to Prairie Material Sales, which instead purchased another site in Crown Point for its project. (*Id.*) Rather, Plaintiff sold the property at a reduced price to someone else, losing the profits he would have gained had the special use permit been granted. (*Id.* at 3-4.) Plaintiff believed that Defendant Klein's veto was unlawful, and filed a claim in state court seeking a declaration that the Mayor overstepped his powers by vetoing the use permit, which had already been approved by other city administrative bodies. (DE 53 at 4.) The trial court ruled that the veto was lawful, and Plaintiff appealed the decision to the Indiana Court of Appeals. (*Id.*) Interpreting Indiana Code § 36-7-4-918.6, the Court of Appeals reversed the lower court's ruling, holding that Klein was acting outside of his powers when he vetoed the grant of the special use permit. (*Id.*) The Court reinstated the permit. (*Id.*)

Plaintiff claims that Defendant Klein's veto, in light of the subsequent decision by the Court of Appeals, deprived him of his property without due process of law. (DE 1 ¶ 21.) Defendants, on the other hand, argue that the claim should be dismissed because: (1) This Court lacks subject matter jurisdiction, or, in the alternative, (2) The Plaintiff has failed to state a claim for which relief can be granted. (DE 52 at 1.) Defendant argues that the Court lacks subject matter jurisdiction because the due process claim is actually an inverse condemnation takings

claim, and that Plaintiff must exhaust other remedial processes before bringing the claim to federal court. (DE 53 at 2.) In the alternative, Defendant argues that the Court should dismiss the claim because Klein is shielded by qualified or absolute immunity. (*Id.* at 13.)

**(C) Analysis**

There are two issues to be considered. First, the Court must determine if the Plaintiff's takings claim is ripe for review. That issue relates to Defendants' Motion to Dismiss under Rule 12(b)(1). Second, the Court must consider whether Plaintiff has a bona fide federal due process or equal protection claim, even if the takings claim alone would be unripe for review.

**(1)** *Plaintiff's Takings Claim Is Not Ripe*

Defendants argue that Plaintiff's complaint is actually a Fifth Amendment takings (by inverse condemnation) claim cloaked as a due process claim. (DE 53 at 6.) Under *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), federal courts are barred from adjudicating takings claims until a plaintiff has satisfied two requirements: "(1) the 'Final Decision Requirement': the plaintiff must demonstrate that he or she received a 'final decision' from the relevant government entity'; and '(2) the 'Exhaustion Requirement': the plaintiff must have sought compensation through the procedures the State has provided for doing so." *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 956 (7th Cir. 2004). *Williamson* provides a limited exception to the exhaustion requirement: the plaintiff may be excused from the exhaustion requirement if he demonstrates that the inverse condemnation procedure is unavailable or inadequate. *Williamson*, 473 U.S. at 197.

5

Plaintiff argues that the procedure is unavailable to him because a taking only occurs when the government deprives the property owner of "all economically beneficial or productive use of land" (DE 55, Resp. Mot. Dismiss, at 3, citing *Galbraith v. Planning Dep't of the City of Anderson*, 627 N.E.2d 850, 853 (Ind. Ct. App. 1994)), whereas his land retained some of its economic value even after Klein's veto.

The United States Supreme Court has acknowledged that what may constitute "all" of a property's value depends on context: "The rhetorical force of our 'deprivation of all economically feasible use' rule is greater than its precision, since the rule does not make clear the 'property interest' against which the loss of value is to be measured." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016 n.7 (1992). In *Mendenhall v. City of Indianapolis*, 717 N.E.2d 1218, 1227 (Ind. Ct. App. 1999), the Indiana Court of Appeals held that a taking by inverse condemnation merely includes "any substantial interference with private property which destroys or impairs one's free use, enjoyment, or interest in the property."

Because of the uncertainty of assessing whether the devaluation of property qualifies the state action as an inverse condemnation taking, the Seventh Circuit has elected repeatedly to stay out of the prediction business. *See SGB Fin. Serv., Inc. v. Consol. City of Indianapolis*, 235 F.3d 1036 (7th Cir. 2000). "Efforts to predict how state courts will handle a particular inverse-condemnation suit are bootless. Instead of asking a federal judge to guess what a state court is likely to do, why not ask the state court?" *Id.* at 1038. This is the case even when a plaintiff strongly suspects, even to the point of near certainty, that the law will not be on his side. "The proceeding belongs in state court even if the plaintiff is convinced that it will lose." *Id.* at 1039. What is important in such a case is not the probability of a favorable outcome in state court, but

rather the availability of the procedure, that is "whether the state courts are available to receive arguments and resolve disputes; that the federal plaintiff likely would lose on the merits [is] neither here nor there." (DE 53 at 10, citing *Sundvall v. City of Shelbyville*, 2008 U.S. Dist. LEXIS 75733, 71 Fed. R. Serv. 3d 1233 (S.D. Ind. 2008).)

**(2)** *Plaintiff Failed To State A Due Process Claim*

Since Plaintiff has not exhausted the local procedures available to him to determine if a taking has occurred, Defendant argues that Plaintiff's federal claim is not ripe. (DE 53 at 6.) "A federal takings claim is not ripe until it is apparent that the state does not intend to pay compensation." *Estate of Himselstein v. City of Fort Wayne*, 898 F.2d 573, 576 (7th Cir. 1990).

However, when a plaintiff has not satisfied the *Williamson* ripeness requirements, a claim that the unfavorable treatment occurred out of ill will or malice can permit a federal claim to be made when a fundamental right, such as due process or equal protection, is at issue. *See Flying J. v. City of New Haven*, 549 F.3d 538, 543 (7th Cir. 2008). Plaintiff claims that Defendant denied his due process by acting out of ill will to deny a favorable ruling. (DE 44 at 4-5.) *Flying J* held that in the case of a substantive due process claim, the circuit will apply the same "ripeness requirements" that it applies to equal protection claims. *Flying J*, 549 F.3d 538 at 543.

In *Flying J*, the plaintiff was a land developer who attempted to obtain more than fifty acres near a highway exit for purposes of constructing a highway truck stop. *Id.* at 541. After a court initially ruled in the plaintiff's favor, seemingly giving the go-ahead to proceed on the project, the local council amended its zoning ordinances. *Id.* at 542. The new ordinance had been specifically tailored to carry the plaintiff's proposed project outside of the legally allowable

7

acreage limits. *Id.* The Court noted that it was perfectly legal for a municipality to target an individual developer: "Such a generally applicable zoning amendment could be adopted because of a single proposed development." *Id.* at 545. However, the targeting cannot be undertaken out of animus. *Id.* at 543. If animus is shown, however, it can still be overcome merely if the court can hypothesize any rational basis for the action. *Id.* at 545. "A given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity. It is only when courts can hypothesize no rational basis for the action that allegations of animus come into play." *Id.* at 547.

In the current case, viewing the facts in a light most favorable to the Plaintiff, there is evidence that the Mayor took the unfavorable action out of animus. Plaintiff alleges that Mayor Klein did not veto the zoning resolution out of a legitimate state interest, but rather "as a political favor to campaign contributor Joe Beckman." (DE 55, at 7.) Plaintiff also alleges that former city councilman Michael Conquest is a full-time employee of Jim Ozinga, who runs a competing redi-mix plant across the street from Plaintiff's proposed development. (*Id.* at 8.) As further evidence that the veto could only have been undertaken out of animus, Plaintiff points out that there are five-hundred feet of land between the Brookside subdivision and the proposed [site] for the plant," implying that a reasonable person would not expect residents provided a buffer of that distance to object to a redi-mix plant. (*Id.* at 9.) The accusations of political patronage mirror the animus concerns in *Flying J*. There, two city council members owned parcels of land near the site of the proposed fifty-three-acre development, and there was suspicion that the ordinance was amended not out of a legitimate state interest, but rather to preserve their property values. *Flying J*, 549 F.3d at 542. The *Flying J* majority, however, dismissed the case using the rationality

8

standard originally articulated in *Lauth v. McCollum*, 424 F.3d 631 (7th Cir. 2005). *Flying J*, 549 F.3d at 545, 548. "A plaintiff who does not belong to any 'suspect' (that is, favored) class – by definition, the situation of a class-of-one plaintiff – must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the classification. . . . Animus comes into play only when no rational reason or motive being imaginable for the injurious action taken by the defendant against the plaintiff, the action would be inexplicable unless animus had motivated it." *Lauth*, 424 F.3d at 634. An example of the kind of government action that would not be able to overcome the presumption of rationality was articulated in *Falls v. Town of Dyer*, 875 F.2d 146 (7th Cir. 1989). "An ordinance saying: 'No one whose last name begins with "F" may use a portable sign in front of a twenty-four-hour food shop, but everyone else may.'" *Id.* at 147.

It is not difficult for this Court to hypothesize reasons why Crown Point, acting through Mayor Klein, would not want to add a second redi-mix plant in the Brookside neighborhood. A second plant could double the noise in the neighborhood. It would double, conceivably, the amount of dust that would be a residual effect of that particular industry. Plaintiff notes that Brookside neighborhood residents would be situated at least five-hundred feet from the redi-mix plant, implying that the distance would act as a sufficient buffer to shield neighbors from any ill effects. However, there is no evidence that such a distance would necessarily negate all ill effects of living near the plant. Residents living to the north of the real estate site, in fact, expressed concern about environmental effects, effects on property value, truck traffic and noise, "among other things," at a public meeting on March 28, 2005, in which the matter was discussed and the special use recommendation ultimately made by the Board of Zoning Appeals. (DE 53 at 2.)

9

**(3)** *Immunity*

As Plaintiff has no claim in this court, the issue of whether Klein is shielded from liability under either a qualified or absolute immunity standard is moot, and need not be determined.

**(C) Conclusion**

As this Court is able to hypothesize rational reasons for the denial of the sought-after land-use permit, Defendant's Motion to Dismiss Plaintiff's due process claim under Fed. R. Civ. P. 12(b)(6) is granted. (DE 52.)

So ORDERED August 9, 2010.

                                                        S/ Joseph S. Van Bokkelen
                                                        JOSEPH S. VAN BOKKELEN
                                                        UNITED STATES DISTRICT JUDGE